IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | Case No. 1:08-cv-0388 OWW TAG |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT |
| v. | (Doc. 10) |
| JORGE LOPEZ, individually and d/b/a Los Arcos Restaurant, | |
| Defendant. | |

On June 24, 2008, plaintiff J & J Sports Productions, Inc. ("Plaintiff"), filed an application for default judgment against defendant Jorge Lopez, individually and doing business as Los Arcos Restaurant ("Defendant"). (Doc. 10). The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302. On July 23, 2008, at 10:30 a.m., the motion was heard before Magistrate Judge Theresa A. Goldner. Attorney Kathleen Faulkner made a special appearance on behalf of Plaintiff. Defendant did not appear.

**BACKGROUND**[1]

On March 17, 2008, Plaintiff filed this action against Defendant alleging violations of

---

[1] The background recitation is derived from Plaintiff's complaint, motion for default judgment and supporting papers, and this Court's file.

1

47 U.S.C. §§ 605 and 553.[2] Plaintiff also raises a common law claim of conversion. (Doc. 1).

Substitute service was effected on May 8, 2008. (Doc. 6). Defendant has not responded to the complaint and, upon application by Plaintiff, a clerk's default was entered against him on June 4, 2008. (Docs. 7, 8). Plaintiff filed the instant application on June 24, 2008, requesting the entry of a default judgment against Defendant. Defendant has not opposed the application.

## **LEGAL STANDARDS**

A defendant is in default upon failing to respond to or answer a complaint within the time period permitted by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 55(a). The rules generally allow a defendant twenty days after service of the summons and complaint to file a responsive pleading. Fed. R. Civ. P. 12(a)(1). If a defendant fails to timely respond to a complaint, a default judgment may be entered against him. See Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986), amended on other grounds, 807 F.2d 1514 (9th Cir.). The issuance of a default judgment is governed by Federal Rule of Civil Procedure 55, which states in relevant part:

> (a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> (b) Entering a Default Judgment.
>
> (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals--preserving

---

[2] 47 U.S.C. § 605 et seq. prohibits the unauthorized use of wire or radio communications, including interception and broadcast of pirated cable or broadcast programming. 47 U.S.C. § 553 et seq. prohibits the unauthorized interception or receipt, or assistance in the intercepting or receiving, of cable service.

any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

Fed.R.Civ.P. 55(a) and (b).

Upon default, well-pled factual allegations, except as to damages, are presumed true. Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992); TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987); see Dundee Cement Co. v. Highway Pipe and Concrete Products, 722 F.2d 1319, 1323 (7th Cir. 1983)("well pleaded allegations of the complaint relating to liability are taken as true").

## DISCUSSION

The proof of service filed with this Court evidences that on May 8, 2008, Defendant was served with the complaint and summons at his business address by substitute service.[3] (Doc. 6). On May 30, 2008, Plaintiff requested a clerk's entry of default against Defendant for failure to appear or respond to the complaint. (Doc. 7). The Court's clerk entered a default on June 4, 2006. (Doc. 8). Nothing in the record indicates that Defendant is an unrepresented incompetent person, a minor, or that he is otherwise exempt from the entry of default judgment. (See Dkt. Report).

Plaintiff seeks judgment against Defendant for unlawfully intercepting, receiving, and intentionally broadcasting the March 19, 2005, *Erik Morales v. Manny Pacquiao World Super Featherweight Championship Fight Program* ("the Program") at his restaurant in Bakersfield, California, for the purpose of direct or indirect commercial advantage, in violation of 47 U.S.C.

---

[3] See Federal Rule of Civil Procedure 4(e)(2) ("service upon an individual . . . may be effected . . . by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof . . . with some person of suitable age and discretion . . . .").

3

§§ 605 and 553. Plaintiff requests enhanced statutory damages in the amount of $100,000.[4] (Doc. 1; Doc. 10, Memorandum, 2:9-12).

**A. <u>Applicable Statutory Provisions</u>**

    **1.  47 U.S.C. § 605**

The relevant provisions of 47 U.S.C. § 605, which addresses unauthorized publication or use of wire or radio communications, state:

> (a) . . . no person receiving, assisting in receiving . . . any interstate . . . communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney . . . . No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.
> . . .
> (e)(3)(A) Any person aggrieved by any violation of subsection (a) of this section . . . may bring a civil action in a United States district court or in any other court of competent jurisdiction.

In addition, the aggrieved party is authorized to statutory damages "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. §605(e)(3)(C)(ii). The court may award enhanced damages up to $100,000 if it finds the violation was willfully committed for commercial advantage or private financial gain. Id. Alternatively, if "the court finds that the violator was not aware and had no reason to believe that his acts constituted violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." 47 U.S.C. §605(e)(C)(iii).

---

[4] Although Plaintiff also requests $800 in damages for its common law claim of conversion, Plaintiff failed to argue this claim in its memorandum of points and authorities in support of its motion for default judgment (Doc. 10, Memorandum), failed to sufficiently outline the elements of a California state law conversion claim, and failed to demonstrate the actual value of the property which Defendant converted. Elements of conversion, under California law, are: (1) ownership or right to possession of property; (2) wrongful disposition of that property right; and (3) monetary damages. <u>G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.</u>, 958 F.2d 896, 906 (9th Cir. 1992). Damages for conversion must be based on the value of the property at the time of the conversion. <u>Krueger v. Bank of America</u>, 145 Cal.App.3d 204, 215 (1983). Accordingly, the Court finds that Plaintiff is entitled to no recovery on its claim for conversion.

**2. 47 U.S.C. § 553**

Unauthorized reception of cable service is governed by 47 U.S.C. § 553, which provides, in pertinent part, that:

> (a)(1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law. . . .
>
> (c)(1) Any person aggrieved by any violation of subsection (a)(1) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction.

Under §553(c)(3)(A)(ii), statutory damages "of not less than $250 or more than $10,000 as the court considers just" are authorized, while §553(c)(3)(B) authorizes damages up to $50,000 if the court finds the violation was willfully committed for commercial advantage or private financial gain. If, however, "the court finds the violator was not aware and had no reason to believe his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100." 47 U.S.C. § 553(c)(3)(D).

**C. Plaintiff's Arguments**

Plaintiff requests a total of $ 100,000 in enhanced damages for Defendant's violations of the two statutes. (Doc. 10). Plaintiff attests that it purchased the exclusive rights to broadcast the Program and that it sub-licensed with other establishments to allow them to broadcast it. (Doc. 1; Doc. 11, ¶ 3). Plaintiff asserts that the piracy of its purchased broadcast rights, and the modest monetary compensation that the courts have historically awarded for the thefts of its signals, undermines the protective and remedial purposes of the statutes. (Doc. 10, Memorandum). In addition, Plaintiff contends that, due to the persistent piracy of its signals, it, legal consumers of the signals, and the community have lost millions of dollars. (Doc. 11, ¶ 10). Moreover, Plaintiff attests that it has expended a large amount of money employing people to police its signals and locate establishments that unlawfully broadcast the programs for which Plaintiff has purchased the rights. (Id. ¶¶ 4-6). Plaintiff asserts that the courts misunderstand the deleterious impact of the pirated broadcasts, regardless of the unlicensed establishment's

advertisements or cover charges, and that, absent more severe consequences in the form of larger monetary damages, society as a whole will pay. (Id. ¶¶ 10-16; Doc. 10, Memorandum, 6:19-7:13).

**D. Analysis**

The Court has reviewed and considered Plaintiff's motion for default judgment and supporting documents, including the affidavit of Plaintiff's investigator who was present at Defendant's restaurant during the unlawful broadcast of the Program (Doc. 10-4), the affidavit of Plaintiff's corporate president (Doc 11), and the declaration of Plaintiff's counsel (Doc. 10-3). The Court has also reviewed and considered Plaintiff's complaint and other pleadings as discussed above. The summons and complaint were properly served upon Defendant, his default was properly entered, and the complaint is sufficiently well-pled. By his default, Defendant has admitted that he willfully violated 47 U.S.C. §§ 533 and 605 as alleged in the complaint, for purposes of commercial advantage. The Court also recognizes that deterrence of future violations is a significant objective of §§ 533 and 605. Accordingly, the Court will recommend that Plaintiff's application be granted and that damages in the sum of $30,000.00 be awarded to Plaintiff.

**RECOMMENDATIONS**

Based on the foregoing, the Court recommends that:

1. Plaintiff's application for default judgment be GRANTED;

2. Judgment be entered in this action against Defendant; and

3. Damages in the total amount of $30,000.00 be awarded as follows:

    a.    $ 10,000 under 47 U.S.C. § 605(e)(3)(C)(i)(II);

    b.    $ 5,000 under 47 U.S.C. § 605(e)(3)(C)(ii) (willful commission);

    c.    $ 10,000 under 47 U.S.C. §553(c)(3)(A)(ii);

    d.    $ 5,000 under 47 U.S.C. §553(c)(3)(B) (willful commission).

///

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within ten (10) <u>court</u> days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   Replies to the objections shall be filed within ten (10) <u>court</u> days after service of the objections. The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  Failure to file objections within the specified time may waive the right to appeal the District Judge's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 25, 2008**                                              **/s/ Theresa A. Goldner**
                                                                                        UNITED STATES MAGISTRATE JUDGE